[Crim. No. 5240. Second Dist., Div. Three. Mar. 21, 1955.]

THE PEOPLE, Respondent, v. GEORGE E. BENTLEY, Appellant.

Gladys Towles Root and Herbert Grossman for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

VALLÉE, J.—Defendant was convicted of a violation of section 288 of the Penal Code. He appeals from the judgment and the order denying his motion for a new trial. The complaining witness, a girl 8 years of age, testified that defendant committed acts denounced by the statute.

The complaining witness testified she did not tell her mother what had happened on the day the alleged offense took place but she told her later; she did not tell her all at once but she did tell her in parts. The mother testified that the girl made a complaint on the day after it occurred, that she did not tell very much that day but told enough, that she told a little more the next day, and a little more the day after that.

A police officer testified he had a conversation with defendant one week after the offense was alleged to have occurred in which defendant denied any fondling or touching of the child. In concluding the statement of the conversation, the officer said, "And I went on to question him about activities he had been involved in in 1942 when he had been a suspect in another case, and he denied this." On motion of defendant the quoted statement was stricken and the jury admonished to disregard it. Defendant then moved for a mistrial, which was denied.

Five character witnesses testified that defendant's reputation for morality was, variously, good, very good, and excellent. On cross-examination of four of the character witnesses, the district attorney asked each of them whether he had ever heard a report that defendant had been arrested on a prior occasion for the same charge for which he was on trial and whether he had ever heard a report to the effect that defendant was charged by a girl named Tomlinson "for the same type of offense" as that for which he was on trial. In addition, two of the character witnesses were asked if they had ever heard a report that defendant had molested a minor child by the name of Johnson in the neighborhood. Each witness testified he had heard no such report.

Thereafter defendant, testifying in his own behalf, was asked by his counsel if he had ever been arrested before for any charge involving mistreatment of a minor child. He answered that he had not. He was also asked by his counsel if he had ever molested or annoyed a child by the name of Tomlinson. He answered that he had not; that he had "never heard of it until yesterday." He was also asked if he had ever molested or annoyed a child by the name of Johnson. He answered that he had not; that he did not "have the faintest idea what Johnson is being referred to." In rebuttal the People called Mary Sue Tomlinson, 18 years of age, who, over objection of defendant, testified that defendant had committed acts on her, denounced by section 288 of the Penal Code, some 10 or 11 years ago. On surrebuttal defendant denied the accusation.

Mazie Tomlinson, mother of Mary Sue, called by the People in rebuttal, on direct examination testified that defendant's reputation in the community for morality was bad. On cross-examination she was asked if she had discussed defendant's reputation with other people. She answered, "Well, I think if a man tries to date up all the married women in the

neighborhood, I wouldn't call that—I don't know if that is morality or not. It isn't considered that——.'' Defendant moved to strike the answer and asked the court to admonish the jury to disregard it. Instead of ruling on the motion, the court interrogated the witness and brought out that she had never discussed defendant's character or reputation with ''anybody else.''

 Defendant urges that 'the statement of the police officer, together with the failure of the court to rule on the motion to strike the answer of Mazie Tomlinson, were prejudicial and on the facts compel a reversal. We agree. While the testimony of the prosecuting witness was sufficient to support the verdict, it leaves one in some doubt. There is a strong indication of coaching in her testimony. She testified that defendant touched her ''vagina''; that she touched his ''penis.'' Her mother taught her these words. The susceptibility of a child her age to suggestion is a well-known fact. The police officer who had the conversation with defendant a week after the offense was claimed to have been committed testified he ''heard a verbal statement from her mother''; that what had happened was not clear to him; ''As I talked to her mother, she informed me the little girl hadn't told her just where Mr. Bentley had touched her or what had happened.'' In the conversation with the officer defendant denied any improper fondling or touching of the child.

It is obvious from the record that the police officer deliberately made the statement about defendant being a suspect in another case in 1942 with the idea in mind of prejudicing defendant. There can be no doubt that the statement was highly prejudicial. The district attorney knew, or should have known, the testimony the officer was going to give and should have warned him not to make the statement. Every prosecutor who offers a witness to testify to conversations with an accused should know what the witness will relate if given a free hand. The prosecutor has the duty to see that the witness volunteers no statement that would be inadmissible and especially careful to guard against statements that would also be prejudicial. The court struck out the objectionable statement of the officer but the damage had been done and could not have been cured by the court's admonition. The mere direction that the testimony should be disregarded was no antidote for the poison that had been injected into the minds of the jurors. The defendant stood as one who had been accused of some other sex offense. His

counsel no doubt realized the gravity of the situation. Should he ignore it or should he allow the defendant to deny that he had been accused of some other offense? He chose the latter course. Defendant denied the former accusation. He did not volunteer that denial; he was driven to it and driven to it wrongfully. When the statement was made the court should have declared a mistrial and discharged the jury.

It is true that under the decisions it was proper for the district attorney to ask the character witnesses whether they had heard the reports he mentioned. But anyone who theorizes that such questions do not have a pernicious effect on the minds of lay jurors with respect to other offenses is indeed naive. The defendant must either remain silent in the face of the devastating questions of the prosecutor or undertake to defend himself against one or more accusations for which he is not on trial.

The mere accusation of an offense upon an 8-year-old girl arouses a feeling of revulsion that is not easily removed. It is especially necessary that in such a case the rights of the defendant be scrupulously respected. (*People* v. *Huston,* 45 Cal.App.2d 596 [114 P.2d 607].) By the time the evidence was in defendant was defending himself not only against the crime charged in the information, but against the charges of misconduct toward the Tomlinson girl and the Johnson girl. What the law does not permit to be done directly was done indirectly.

Although the character witnesses of the accused may be cross-examined concerning charges or reports of other offenses or of misconduct inconsistent with the possession of a good reputation, it is highly important that the jurors understand that the purpose of the inquiry is merely to test the worth of the opinions the witnesses have expressed as to the reputation of the accused. Such questioning by the prosecutor carries an implication that such rumors have been in existence and would naturally cause the accused to be suspect of grievous wrongdoing or perhaps of other crimes. It is necessary that the jurors should put out of their minds all question as to the truth of the rumors or charges, and yet they cannot know the limited purpose of the cross-examination unless it is explained to them.

The defendant did not request such an instruction and none was given. One should have been given of the court's own motion. It was especially necessary because of the course

of the trial after defendant had denied the accusations with relation to other children but we think a cautionary instruction should be given in every case in which such cross-examination is permitted.

Defendant did not have a fair trial. Upon the record the errors complained of require a reversal. Manifestly we cannot say that they did not result in a miscarriage of justice.

The judgment and the order denying a new trial are reversed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied April 4, 1955, and respondent's petition for a hearing by the Supreme Court was denied April 20, 1955. Edmonds, J., and Spence, J., were of the opinion that the petition should be granted.