Jesse ACOSTA–HUERTA,
Petitioner–Appellant,

v.

Wayne ESTELLE, Warden, California
Men's Colony, Respondent–
Appellee.

No. 90–56283.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 7, 1992.*

Decided Jan. 23, 1992.

Amended Opinion filed Oct. 8, 1993.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4.

Jesse Acosta–Huerta, pro per.

Peter Quon, Jr., Deputy Atty. Gen., San Diego, CA, for respondent-appellee.

Before: FARRIS, NOONAN, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Jesse Acosta–Huerta, proceeding pro se, filed a petition for writ of habeas corpus in federal district court. In his petition, Acosta–Huerta alleges a violation of his Sixth Amendment right to confront an adverse witness when a sworn deposition was read into evidence after the state trial court declared the witness to be "unavailable." Additional allegations of error in the state proceeding include failure to sever the trial and failure to grant a new trial because the prosecutor suppressed relevant evidence. The petition for writ of habeas corpus was denied by the district court. A certificate of probable cause was issued by this court. Reviewing the trial court's denial of the petition de novo, *Thomas v. Brewer*, 923 F.2d 1361, 1364 (9th Cir.1991), we affirm.

## I

Joe "Nico" Varela, a member of the Mexican Mafia and a heroin dealer, was found dead in a remote drainage canal near Braw-ley, California. Previously, he had threatened Joe Montenegro ("Joe"), one of Acosta–Huerta's codefendants, and his family because Joe was apparently buying heroin from other sources.

On October 5, 1980, Nico stopped at Joe's house. He told Vickie Montenegro ("Vickie") that he "wasn't going to take any shit from anybody," and then drove away. Joe, Robert Montenegro ("Robert"), Henry Gonzales, and Acosta–Huerta saw Nico and talked amongst themselves about "getting rid" of him because he was "starting too much shit."

That same day, Nancy Googe, Gonzales' ex-wife, went to Joe's house to buy some heroin from Vickie. About an hour after her arrival she thought she heard Nico's car in the driveway. To avoid a confrontation, she departed through a back bedroom window.

At about 6:00 p.m., Nico, Gonzales, Acosta–Huerta, Jesse Vasquez, Joe, and Robert arrived at Joe's house and began injecting heroin. Nico, after several injections, fell asleep in a chair. Acosta–Huerta, Robert, and Joe pulled Nico from the chair, carried him to a parked car, and placed him in the front passenger's seat. Robert, Gonzales, Acosta–Huerta, and Vasquez drove off, leaving Joe behind. Three of the men, including Acosta–Huerta, carried revolvers with them when they left. Later that evening, Robert told Joe that the men had shot Nico. Two months later, Acosta–Huerta told Vickie he had put a bullet in Nico's head.

On December 6, 1982, after murder charges had been filed and pursuant to court order, Googe was conditionally examined in California.[1] The defendants waived their personal appearances, but defense counsel attended and cross-examined Googe regarding the death of Nico. Googe's testimony corroborated the state's case. The testimony also partially supported Acosta–Huerta's alibi defense that he was moving during the week of the killing. At the conclusion of the conditional examination, Googe was served by Acosta–Huerta's counsel with a subpoena to appear at trial. Googe did not comply with the subpoena.

---

**1.** *See* Cal.Penal Code § 1335 (West Supp.1991).

On March 4, 1983, the state trial court issued a "Certificate of Judge of Requesting State for Attendance of Out–of–State Witness," pursuant to the Uniform Act to Secure the Attendance of Witnesses from without the State in Criminal Cases,[2] to compel Googe's attendance at trial.

The prosecutor and an investigator travelled to Yuma, Arizona, in an attempt to persuade Googe to appear at the California trial. Googe indicated that she would rather "rot" in an Arizona jail. A hearing on the certificate was held in the Superior Court of Arizona on March 8, 1983. The prosecutor testified about the materiality of Googe as a witness. When asked by the Arizona judge whether he could give any reason why Googe should not appear in California, the prosecutor candidly explained the dangerous circumstances surrounding the case and advised the court that Googe had been threatened.

The Arizona court thereafter denied the request under the Uniform Act for three reasons: (1) Googe had been deposed earlier where she was available for examination by all parties; (2) threats of physical harm had been made against Googe and her family; and (3) appearance in California would constitute an undue hardship on Googe.[3] [SER–17.] The defendants did not challenge the Arizona findings. Based upon the Arizona order, the California trial court ruled that the prosecution had exercised due diligence in trying to obtain Googe's presence at trial and declared her to be an "unavailable" witness. Her prior testimony was read into the record.

A jury trial found Acosta–Huerta and some of his codefendants guilty of first degree murder and conspiracy to murder. The conviction was affirmed by the California Court of Appeal.[4] He is currently serving concurrent sentences of 25 years to life.

2. *See* Cal.Penal Code §§ 1334–1334.6 (West Supp.1991).

3. Before directing the witness to testify in another state pursuant to the Uniform Act, Ariz.Rev. Stat.Ann. § 13–4092(B) (1991) requires, among other things, that the Arizona judge determine

## II

The state alleges that Acosta–Huerta failed to exhaust his state remedies, as required by 28 U.S.C. § 2254(b) (1988), on some issues raised before this court. It claims that we are precluded from considering the prosecutor's alleged: (1) knowledge that Googe's statement would corroborate Acosta–Huerta's defense of alibi [Appellant's Brief at 22–23, 35]; (2) procurement of alibi-impeaching testimony from Rosario Valverde that he had helped Acosta–Huerta move on a day other than a Sunday [Appellant's Brief at 22, 27–28]; and (3) misleading representation to the court that "good faith" was utilized in locating Googe [Appellant's Brief at 18]. [Appellee's Brief at 19–21.]

Acosta–Huerta unsuccessfully sought a rehearing from the opinion of the Fourth Appellate District. He then filed a petition for review in the California Supreme Court, alleging only that characterization of Valverde as a mere accomplice was error. Review was denied in a brief order. Subsequently, he filed a petition for writ of habeas corpus in the California Supreme Court and presented all issues originally brought before the Court of Appeal. The Supreme Court summarily denied the petition.

■ A direct appeal is not necessary to exhaust state remedies if state law provides an alternative route of review through a writ of habeas corpus brought before the state's highest court. *See Irvin v. Dowd,* 359 U.S. 394, 406, 79 S.Ct. 825, 832, 3 L.Ed.2d 900 (1959); *Wade v. Mayo,* 334 U.S. 672, 677–79, 68 S.Ct. 1270, 1273–74, 92 L.Ed. 1647 (1948). California's

> general rule is that habeas corpus cannot serve as a substitute for appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were

that undue hardship will not result from testifying.

4. The Court of Appeal also denied Acosta–Huerta's motion for writ of habeas corpus which was considered contemporaneously with the appeal.

not, raised upon a timely appeal from a judgment of conviction.

*People v. Sumstine*, 36 Cal.3d 909, 206 Cal. Rptr. 707, 714, 687 P.2d 904, 911 (1984) (quotation omitted). Acosta–Huerta, pursuant to California law, has exhausted state procedures relating only to the issues raised in the petition for direct review before the California Supreme Court.

The Supreme Court in *Ylst v. Nunnemaker*, —— U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), enunciated a presumption to determine whether there has been a decision on the merits when a state's highest court issues an unexplained order denying an appeal or petition to that court. The Court determined that "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Nunnemaker*, —— U.S. at ——, 111 S.Ct. at 2594.

Although not addressed by the district court, Acosta–Huerta failed to bring before the California Supreme Court on direct appeal not only the issues noted by the state, but also the broader issues of whether a severance should have been granted and the admissability of Googe's testimony. [TD 3 Exh. 4.] However, for purposes of federal habeas corpus, Acosta–Huerta has exhausted state procedures relating to all claims addressed by the California Court of Appeal's opinion. Although it appears there was a procedural defect in Acosta–Huerta's state habeas petition because he failed to previously raise all claims on direct appeal, we will "presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place." *Nunnemaker*, —— U.S. at ——, 111 S.Ct. at 2594.

■ The presumption, however, may not address the precise arguments the state now alleges Acosta–Huerta failed to exhaust. Acosta–Huerta argued in the state petition for habeas corpus that: (1) Googe's testimony was necessary to his alibi defense [ER (state habeas petition) at 30–31, 35]; (2) Valverde testified that Acosta–Huerta moved on a weekday [*id.* at 31–32]; and (3) the prosecutor mislead the trial court [*id.* at 37–38].

He failed to argue, however, that the prosecutor intentionally procured Valverde's testimony knowing that it was false.

■ We need not decide whether the decision of the Court of Appeal, although it did not accept or reject Acosta–Huerta's specific allegations of misconduct, was an exhaustion of these claims. Because the exhaustion doctrine exists as a matter of comity, *Granberry v. Greer*, 481 U.S. 129, 133, 107 S.Ct. 1671, 1674, 95 L.Ed.2d 119 (1987), we have jurisdiction to consider unexhausted claims in a mixed habeas petition if those claims "clearly do not rise to the level of alleged deprivations of constitutional rights." James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 9.3(b), at 122 (1988). Although Professor Liebman suggests that this exception is applicable to all cases, the cases that he cites all involve mixed habeas petitions. In such cases, courts have understandably denied unexhausted claims that are meritless in order to reach the merits of more compelling claims that were exhausted.

Acosta–Huerta's unexhausted claim meets this demanding standard. Thus, there is no significant issue which a state tribunal must first confront so that we avoid "unnecessary conflict." *Granberry*, 481 U.S. at 133, 107 S.Ct. at 1674. On the merits, Acosta–Huerta does not present us with a case requiring relief through habeas corpus and to require further litigation in the state system on the prosecutor's alleged misconduct would be useless. The record regarding the confrontation of Googe as a witness is fully developed. Acosta–Huerta's other allegations of error have been abandoned.

### III

■ Acosta–Huerta specifically argues that he was denied his Sixth Amendment right to confront an adverse witness because the prosecutor failed to exercise good faith and due diligence in securing Googe's appearance as a witness in the California criminal proceeding. Determinations of a state court on factual issues are "presumed to be correct...." 28 U.S.C. § 2254(d). The presumption does not attach to a state court's resolution of mixed questions of law and fact.

*Hamilton v. Vasquez,* 882 F.2d 1469, 1471 (9th Cir.1989).[5] A state trial court's decision that a witness is constitutionally "unavailable" is an evidentiary question we review de novo, rather than for an abuse of discretion. *Dres v. Campoy,* 784 F.2d 996, 998 (9th Cir.1986).

■ "[T]he right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Barber v. Page,* 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968) (citations omitted). An exception is recognized where the witness is "unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Id.* at 722, 88 S.Ct. at 1320. A witness is not "unavailable," however, unless "the prosecutorial authorities have made a good-faith effort to obtain [her] presence at trial." *Id.* at 724–25, 88 S.Ct. at 1321–22.[6]

■ Acosta–Huerta argues that Googe's prior testimony was improperly admitted into evidence because she was not "unavailable" pursuant to California law which precludes "absence of the declarant ... [through] procurement or wrongdoing of the proponent of [the] statement...." Cal.Evid.Code § 240(b). He argues that the Arizona proceeding was a sham because the prosecutor: (1) did not subpoena Googe before she left California; (2) had entered into a "deal" with Googe that she would not be subpoenaed; (3) knew that Googe would aid his alibi; (4) did not advise the defendants of the Arizona hearing;[7] (5) did not seek to persuade the Arizona judge to force Googe to attend the trial but only went through the actions of holding a hearing; and (6) mislead the trial judge that good faith had been utilized.

These allegations lack support in the record. The prosecution was not required to subpoena Googe before she left the state. Even had a subpoena been issued, Googe likely would not have complied because the subpoena served on Googe by Acosta–Huerta was not honored. Use of the Uniform Act would have ultimately been required. Additionally, if Googe's testimony was material to his defense, Acosta–Huerta himself could have utilized the Uniform Act in an attempt to force Googe to attend the trial. *See People v. Dozier,* 236 Cal.App.2d 94, 105, 45 Cal.Rptr. 770 (1965).

The defendants were aware that the court had issued the certificate seeking to compel Googe's attendance at trial. Any knowledge the prosecutor had regarding the necessity of Googe's testimony at trial, based on the conditional examination, was also available to Acosta–Huerta. Further, during the hearing in Arizona, the prosecutor only discussed the reasons Googe should not attend the California proceeding in response to the court's inquiry. Accurate statements in response to a court's questioning cannot be considered improper "procurement."

At the time Googe's prior testimony was sought to be introduced at trial, the prosecutor chronicled the events leading up to the Arizona hearing. The prosecutor explained how Googe had been tracked by an investigator to Arizona and that the prosecutor and his investigator went to Arizona in an attempt to convince Googe to return. The trial court then independently reviewed the transcript of the Arizona proceedings and found

---

5. Acosta–Huerta argues that the district court reviewed the state proceeding using an incorrect legal standard. He proposes that the correct standard is whether there was a "reasonable possibility" that the evidence had an effect on the verdict under *United States v. Vasquez,* 597 F.2d 192, 193 (9th Cir.1979). Because *Vasquez* was a direct appeal and concerned prejudicial *extrinsic* evidence considered by the jury, it is inapplicable to the present case.

6. Cal.Evid.Code § 240(a)(5) (West Supp.1991) provides that a witness is "unavailable" if she is "[a]bsent from the hearing and the proponent of [the] statement has exercised reasonable diligence but has been unable to procure ... her

attendance by the court's process." A California court's process includes the powers under the Uniform Act. *Dres,* 784 F.2d at 999.

7. The California Court of Appeal found that this argument was not raised in the trial court and rejected it on that basis. [SER 63] *See Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), *reh'g denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977) (collateral relief on habeas barred unless petitioner meets "cause and prejudice" standard for failure to raise objection in trial court). We will therefore not consider this allegation of prosecutorial misconduct.

that due diligence had been exercised. At no time did the prosecutor misrepresent facts to the trial court.

■ Resort to the Uniform Act, in combination with the prosecution's other efforts to persuade Googe to testify, satisfies the demands of the Confrontation Clause. *See Dres,* 784 F.2d at 999–1001 (the prosecutor made a good faith effort to obtain the witness even though the Uniform Act was not utilized). The prosecutor did not improperly effect Googe's absence. Googe was, therefore, properly found to be "unavailable."[8]

## IV

■ Acosta–Huerta lists additional "contentions" in his opening brief and through a footnote states that he "will confine his arguments to contention (I), but also seeks review on [the remaining contentions]...." He then references the petition for habeas corpus filed in the district court. The federal rules require the brief to contain "the contentions of the appellant with respect to the issues presented, and the reasons therefore, with citations to the authorities, statutes and parts of the record relied on." Fed.R.App.P. 28(a)(4). "Issues raised in a brief which are not supported by argument are deemed abandoned.... We will only review an issue not properly presented if our failure to do so would result in manifest injustice." *Leer v. Murphy,* 844 F.2d 628, 634 (9th Cir.1988) (citations omitted); *see also United States v. Turner,* 898 F.2d 705, 712 (9th Cir.1990) (issue was abandoned because appellant failed to support his contention with any argument but sought to adopt the arguments of his codefendants), *cert. denied,* 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990). Because Acosta–Huerta made no argument with respect to the remaining issues of whether a new trial should have been granted and whether the trial should have been severed, they are deemed abandoned.

AFFIRMED.

---

**8.** The prior testimony must also bear "indicia of reliability." *Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980). Testimony made under oath, subject to cross-examination and with counsel present meets this requirement. *Dres,* 784 F.2d at 1001.