**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VICTOR MANUEL RENDEROS,
          *Petitioner-Appellant,*

v.

STUART RYAN, Warden, California
State Prison, Calipatria,
          *Respondent-Appellee.*

No. 05-16454

D.C. No.
CV-04-05250-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
April 5, 2006—San Francisco, California

Filed November 8, 2006

Before: Eugene E. Siler, Jr.,* Johnnie B. Rawlinson, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Siler

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

18363

## COUNSEL

Anne C. Beles, Robert J. Beles, and Paul McCarthy, Oakland, California, for the appellant.

Gregg E. Zwycke, Bill Lockyer, Robert R. Anderson, Gerald Engler, and Peggy S. Ruffra, San Francisco, California, for the appellee.

## OPINION

SILER, Circuit Judge:

Petitioner Victor Renderos appeals the denial of his petition for a writ of habeas corpus. Because Renderos identifies no "clearly established federal law" that was misapplied or violated by the California Court of Appeal, and does not contend that there was an unreasonable determination of the facts, we deny the petition.

## I.[1]

Renderos dated Lisa C. during the early 1990s. She had two sons, Ryan and Jordan, both of whom were under 14 years old. Renderos spent a lot of time with Lisa and her sons, and Ryan thought of Renderos as a father. However, the relationship ended after a few years, sometime in the mid 1990s.

When Ryan was seventeen, he told his mother that Renderos had sexually molested him. He had not previously said anything to his mother because the incidents made him feel "gay" and he feared he would get in trouble. On March 19, 2001, Ryan reported the abuse to the police. One month later, investigators taped two telephone conversations between Ryan and Renderos. Ryan asked Renderos whether he remembered the molestations and asked why Renderos had molested him. Ryan reminded Renderos about an incident that had occurred on a canoeing trip and asked why Renderos had touched him. Renderos at first stated he did not remember the trip and denied touching Ryan when he was little. Renderos then stated,

> But don't worry about shit like that, Man. That was
> something that, you know, happened a long time ago

---

[1]These facts are taken largely from the district court's recitation of the California Court of Appeal decision.

and that you — we just did some playing around, you know? . . . No big thing.

During the second call, Ryan asked Renderos for advice about problems which he thought were based upon his past. Renderos protested,

> Hey, come on over, Man. You know . . . things like that happen. Hey, it was just — you was crazy at the time. You remember that . . . . You know, you were crazy and you want to experiment things, you know and things like that. You're the one that motivated the whole thing, you know? Just let the guilt out of your head.

Ryan further stated he was bothered by Renderos's act of "always, like, mak[ing] me put my hand on your penis." Renderos replied, "Oh well, you know? You — you wanted to do that. You know remember? You wanted to." When Ryan wondered why this was relevant given that he was only eight years old then, Renderos claimed: "You were about 12, Man. You were old, already . . . . I didn't meet you when you was eight. You were older than that." When Ryan again stated it was not normal for "guys to grab each other's dicks," Renderos replied, "Oh, it's a — I know. Yeah, I couldn't figure out why you want to do it. Remember that?" When Ryan said he did not really want to do it but Renderos forced his hand, Renderos replied, "No, you're . . . the one. You started out, remember, you wanted to experiment crazy things. You . . . were always doing crazy things. Remember that?" When Ryan again said he did not understand why Renderos wanted Ryan to "try to suck his dick" because it was like Renderos was using Ryan to get what he wanted, Renderos replied,

> Oh, no. Huh-uh. No, no. You got me wrong . . . . You're the one that always wanted it. Remember the way you are, Man. The way you used to be. You want to do this, you want to do that . . . . I didn't

force you into doing anything. You're the one that motivated everything. Think about that.

Ryan stated he did not know how he had motivated the sex because he was too young, to which Renderos replied, "Well, you knew what you were doing, Bro."

The remainder of the telephone conversation continued in the same vein, with Ryan asking Renderos if he remembered the sexual encounters, and Renderos telling Ryan to forget about the incidents and inviting Ryan to talk to Renderos more about the incidents because then they might stop bothering him.

Five days after the telephone conversations, on April 25, 2001, California filed a criminal complaint against Renderos charging him with various and multiple counts of felony sex offenses.

At trial, Ryan testified that the incidents began when he was only eight years old. The first incident occurred during a canoeing trip on the Russian River. After urinating next to each other, Renderos took Ryan's hand, placed it on Renderos' penis and told Ryan to keep it there. Ryan withdrew his hand after a few seconds. The second incident occurred about two months later. Renderos was at Ryan's home for the nightly dinner with the family. After dinner, Ryan's mother left the house to attend to her real estate business. Ryan was in his bedroom changing his clothes when Renderos came in. Renderos reached through the opening in Ryan's boxer shorts and pulled on Ryan's penis for a few seconds. Renderos then placed Ryan's hand on his penis and instructed Ryan to pleasure him.

The sexual abuse, which Ryan described as "touching, the[n] me jacking him off," became more frequent as Ryan got closer to nine. Ryan testified that it occurred "at least once every three days." In addition to the forced masturbation,

Ryan testified that when he was nine or ten, he was forced to orally copulate Renderos; and on a few occasions, Renderos used his finger and once used his penis to penetrate Ryan's rectum. Ryan testified that the abuse occurred from the time he was eight years old until he was eleven.

Renderos testified on his own behalf and denied molesting Ryan on any occasion. He claimed that he met Ryan's mother sometime in 1992 or 1993, and he dated her for three or four years. He could not recall how old Ryan was when he first met the boy; he thought Ryan must have been around ten years old at the time. He testified that although he ate dinner at their home almost every night, he never inappropriately touched Ryan. Renderos testified that practically every night that he was at Lisa's home, he and Lisa had intimate relations in her bedroom after the boys went to bed, and that he left at about 11:00 p.m. He recalled caring for the boys on only five occasions without their mother.

Renderos explained that his statements during the recorded telephone calls with Ryan referred to incidents that took place when Ryan was eleven or twelve years old. On a few occasions, after having sex with Ryan's mother, Renderos came out of Lisa's bedroom to find Ryan outside the bedroom door. He recalled Ryan once asking coyly, "how do [you] like my mother's . . . female part?" Renderos said Ryan would grab [Renderos's] penis through his clothes. Renderos told Ryan to stop touching him and told Lisa about the incidents, suggesting they have intimate relations later in the evening. The incidents happened on five occasions. Renderos claimed all the statements he made on tape were references to these incidents instigated by Ryan.

Renderos was found guilty of one count of committing continuous sexual abuse (during a four-month period when Ryan was eight years old), one count of oral copulation (when Ryan was nine or ten years old), one count of sexual penetration with a foreign object (when Ryan was ten years old), and 23

counts of committing a lewd act on a child under 14 (each count covering a one-month interval from September 1, 1992 through July 31, 1994 when Ryan was eight, nine, and ten years old). Although the statute of limitations had expired under CAL. PEN. CODE §§ 800 and 801, the jury found that the prosecution satisfied the predicate requirements under Section 803(g), which made the prosecution timely. The trial court sentenced Renderos to an aggregate term of 66 years in prison.

On direct appeal, the California Court of Appeal denied summary reversal. *See People v. Renderos*, 114 Cal. App. 4th 961 (Cal. Ct. App. 2003) (partially published). The California Supreme Court denied review. *See People v. Renderos*, 2004 Cal. LEXIS 3290 (Cal. April 14, 2004). The district court denied Renderos's application for a writ of habeas corpus. The court issued a Certificate of Appealability ("COA") on several grounds: (A) that application of CAL. PEN. CODE § 803(g), which extended the statute of limitations for sex offenses with minors, is a violation of the Ex Post Facto Clause as declared by the Supreme Court in *Stogner v. California*, 539 U.S. 607 (2003); (B) that it was error to hold that the conditions for invoking section 803(g) could be proven by a standard lower than "reasonable doubt"; (C) that it violated due process to admit evidence of Renderos's other bad acts; (D) that it was prejudicial prosecutorial misconduct to refer to stricken testimony by the victim's mother during closing argument; (E) that Renderos was prejudiced by trial counsel's ineffective assistance; and (F) that there was cumulative error.

## II.

This appeal is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Subsection (d) states:

> An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was

adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

To be an "unreasonable" application of Supreme Court precedent, a state court decision has to be more than merely "erroneous," *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); it must be "objectively unreasonable," *Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, the object of our inquiry is not to revisit the merits underlying the conviction, *see Coleman v. Thompson*, 501 U.S. 722, 730 (1991), but rather to look to the highest state court to render a reasoned decision and inquire whether the conviction was procured in violation of the constitution or federal law, *see Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

## A.

Renderos contends that CAL. PEN. CODE § 803(g) violates the Ex Post Facto Clause of the United States Constitution. *See* U.S. CONST., art. I, § 10 ("No state shall . . . pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts . . . ."). The six- and three-year limitations periods under CAL. PEN. CODE §§ 800 and 801, respectively, each of which was applicable to certain charges, expired on his case by early 2001.[2] Relying almost exclusively on *Stogner*, 539

---

[2]The limitations periods depend upon the maximum punishments, and Renderos was charged under different statutes with differing maximum

U.S. at 614-15, Renderos claims that Section 803(g)[3] impermissibly revived the limitations period. Section 803(g) states:

(1) Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5.

(2) This subdivision applies only if all of the following occur:

(A) The limitation period specified in Section 800, 801, or 801.1, whichever is later, has expired.

(B) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual.

(C) There is independent evidence that corroborates the victim's allegation. If the

penalties. *See* CAL. PEN. CODE § 800 ("[P]rosecution for an offense punishable by imprisonment in the state prison for eight years or more shall be commenced within six years after commission of the offense."); CAL. PEN. CODE § 801("[P]rosecution for an offense punishable by imprisonment in the state prison shall be commenced within three years after commission of the offense."). The parties agree that the limitations period under both provisions had lapsed by the time the criminal complaint was filed.

[3]This was the applicable subsection numbering at the time. In 2005, and after litigation commenced, California amended the statute deleting the old subsection (f) and renumbering the old subsection (g) as subsection (f) without any substantive alterations. We refer to the statute as the parties have in its pre-amendment form.

victim was 21 years of age or older at the
time of the report, the independent evidence
shall clearly and convincingly corroborate
the victim's allegation.

(3)   No evidence may be used to corroborate the
victim's allegation that otherwise would be inadmis-
sible during trial. Independent evidence does not
include the opinions of mental health professionals.

Thus, Renderos contends, § 803(g) is a violation of the Ex
Post Facto Clause because by its terms, it only applies to
those charges on which the original period under §§ 800 and/
or 801 has lapsed.

The California Court of Appeal, the highest state court to
review this case on the merits, rejected the same argument:

The proviso that the subsection does not apply unless
the statute of limitations has expired in section 800
or 801, "obviously ensures that the one-year period
in section 803(g)(1) does not override or otherwise
conflict with sections 800 or 801 where [the victim]
reports the crime to a qualifying law enforcement
agency before the three-year or six-year period set
forth in the latter provisions 'has expired.' In this
way, the limitations period in Section 803(g) — like
other 'tolling' and 'extension' provisions in the same
statute — serves to prolong, rather than shorten, the
time in which a felony child molestation prosecution
may be commenced." (*People v. Frazer*, [21 Cal.4th
737, 752 (1999)]).

. . . .

That the People could not prosecute an action until
a report was filed by the victim . . . does not support
Renderos's contention [that] the statute as applied to

him had the effect of "reviving" a prosecution barred by the statute of limitations. Because the statute of limitations under section 800 had not expired when section 803(g) became effective on January 1, 1994, section 803(g) permitted the People to commence prosecution for the offenses within one year after the filing of Ryan's report, notwithstanding the limitation period in section 800.

*Renderos*, 114 Cal. App. 4th at 966 (footnote omitted). The California Court of Appeal did not misapply *Stogner*, nor any other clearly established Supreme Court precedent prohibiting ex post facto laws.

**[1]** First, *Stogner* is materially distinct from the case before us. There, the Supreme Court addressed whether a different provision, CAL. PEN. CODE § 803(g)(3)(A) (1996), violated the U.S. Constitution's ban on ex post facto laws. Stogner was charged in 1998 for sex-related acts with minors that allegedly occurred between 1955 and 1973. *See* 539 U.S. at 609. The statutes of limitations under §§ 800 and 801 which also covered those charges had long since run. *Id.* at 610. In 1994, California enacted CAL. PEN. CODE § 803(g), and a 1996 amendment — now repealed per *Stogner* — provided that satisfaction of the conditions in § 803(g)(2) "shall revive any cause of action barred by [prior statutes of limitations]." CAL. PEN. CODE § 803(g)(3)(A) (1996) (alteration omitted).

**[2]** The Supreme Court found the law unconstitutional, holding that a statute enacted after the expiration of a statute of limitations and that revives prosecution is a classic ex post facto law and is no different from a statute that authorizes punishment for an act that was not illegal at the time it was committed. *Stogner*, 539 U.S. at 614-15. The Court also held that the case represented another type of Ex Post Facto Clause violation where there is a reduction in the quantum of proof necessary to convict, observing that "a statute of limitations reflects a legislative judgment that, after a certain time, no

quantum of evidence is sufficient to convict." *Id.* at 615 (citing *United States v. Marion*, 404 U.S. 307, 322 (1971)). However, the critical element in both of these holdings was the fact that the amendment in question became effective after the statute of limitations had already expired. *Stogner*, 539 U.S. at 618-19. The Court observed that the evils sought to be avoided by the Ex Post Facto Clause were visited upon Stogner because he went years under the belief that he would not be prosecuted, and there was an irrebuttable presumption that one is prejudiced under such a belief. *See id.* at 611.

**[3]** Here, § 803(g) was enacted while the limitations periods were still running on the claims against Renderos. This is, therefore, precisely the type of statute that *Stogner* expressly stated it was *not* striking down. *See id.* at 618-19. Renderos identifies no other case on point. Therefore, we cannot conclude that the California Court of Appeal's determination was "contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. . . ." 28 U.S.C. § 2254.

**[4]** Furthermore, Renderos's canonical invocations of *Stogner*'s verbiage are equivocal and unavailing. He essentially argues that had § 803(g) directly extended — or even abolished — the limitations periods in §§ 800 and 801, then it would not have run afoul of the Constitution, but that because it is a different limitations period that is triggered once the other periods expire, it amounts to a revival statute of the type criticized by the Supreme Court. However, contrary to Renderos's mistaken belief, § 803(g) seamlessly, albeit conditionally, extends the statute of limitations immediately upon expiration of the other periods. Thus, there is never a period in which a putative defendant is subject to "punishment[ ], where [he] was not, by law, liable to any," *Stogner*, 539 U.S. at 612 (quoting *Calder v. Bull*, 3 U.S. 386, 389 (1798)), until one year after the victim files a report with the proper authorities. The fact that the extension is conditional is a distinction without a relevant difference. Subsections

803(g)(2)(A)-(C) state conditions that must be satisfied by the prosecution before extending the limitations period. These, therefore, inure to a defendant's benefit by shielding him against potentially arbitrary prosecutions that the victim has not supported and against accusations supported by flimsy, stale, or uncorroborated evidence. *See* CAL. PEN. CODE § 803(g)(2)(A)-(C).

**[5]** Finally, the application of § 803(g) to this case does not "threaten[ ] the kind of harm that . . . the Ex Post Facto Clause seeks to avoid." *Stogner*, 539 U.S. at 611. There is no manifest injustice here because there was no "retroactive effect," as the original limitations period had not yet expired. *Id.* For the same reason, Renderos cannot claim prejudice as he never became "safe from . . . pursuit" because he had notice and "fair warning" that even though the three- and six-year limitations periods would soon expire, he could still be prosecuted under § 803(g). *Id.* (quoting *Falter v. United States*, 23 F.2d 420, 426 (2d Cir. 1928), *cert. denied*, 277 U.S. 590)).

**[6]** Therefore, we cannot conclude that the Court of Appeal misapplied clearly established Supreme Court precedent.

## B.

Renderos claims that the jury should have been required to find beyond a reasonable doubt the conditions for triggering the extension under §§ 803(g)(2)(A)-(C). The trial court charged the jury with finding guilt beyond a reasonable doubt, but instructed the jury that after it found guilt, it had to find by clear and convincing evidence the elements of §§ 803(g)(2)(A)-(C). Renderos argues that because California courts have treated statutes of limitations as elements of the offense, they have to be proven beyond a reasonable doubt.

In rejecting this claim, the California Court of Appeal held:

> Renderos's argument is based upon the premise that
> because a defendant cannot be convicted of an

offense that is time-barred, the statute of limitations is an "element of the offense" that needs to be proved beyond a reasonable doubt. Concededly, the courts have described the statute of limitations as part of the People's case to plead and prove as any other "element" of the offense . . . . However, our Supreme Court has consistently held the prosecution is required to prove any factual allegations regarding the statute of limitations only by a preponderance of the evidence in the absence of any other standard set by the legislature.

We reject Renderos's contention that prevailing federal constitutional law concerning the burden of proof in criminal cases requires us to now declare the factual allegations concerning the statute of limitations should be deemed an element of the offense that must be established beyond a reasonable doubt. "[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of an offense of which the defendant is charged." (*Patterson v. New York* (1977) 432 U.S. 197, 210). In *Apprendi v. New Jersey* (2000) 530 U.S. 466, 476, 490, the United States Supreme Court also held the federal constitution requires the prosecution to prove beyond a reasonable doubt any fact, other than a prior conviction, that increases the maximum punishment for the offense. However, no United States Supreme Court or lower federal court case holds, as a matter of federal constitutional law, that the timeliness of a criminal prosecution must be proved beyond a reasonable doubt.

*Renderos*, No. 097873, Calif. Ct. of Appeal, Dec. 30, 2003, pp.16-17 (unpublished) (some citations omitted).

Here, the Court of Appeal did not err. Renderos fails to identify any Supreme Court precedent clearly establishing

that statutes of limitations must be proven beyond a reasonable doubt. In fact, he concedes that no such case exists. Rather he relies on *In re Winship*, 397 U.S. 358 (1970), for the proposition that any fact predicate to a conviction must be proven beyond a reasonable doubt. However, we do not read *In Re Winship* so broadly. Though every element of the crime must be proven beyond a reasonable doubt to convict, not every predicate to a conviction is an element of the crime.

**[7]** In *In Re Winship,* the Supreme Court confronted the question of the quantum of proof necessary for the conviction of a juvenile offender in juvenile court. The Court observed that "[d]ue process commands that no man shall lose his liberty unless the Government has borne the burden of [proof] . . . . It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned." 397 U.S. at 364 (citations omitted). The Court then held, "Lest there [be] any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.*

**[8]** The findings necessary to trigger § 803(g) do not fall within the due process penumbra expounded in *In Re Winship*, and no subsequent case has so expanded it. Section 803(g) does not define a crime, and §§ 803(g)(2)(A)-(C) do not prescribe facts that "constitute the crime." 397 U.S. at 364. "Section 803(g) regulates the time at which child sexual abuse *defined and punished elsewhere in the Penal Code* may be charged." *Frazer*, 21 Cal. 4th at 760 (italics in original) *overruled on other grounds by Stogner*, 539 U.S. at 611. Directly on point is *United States v. Gonsalves*, 675 F.2d 1050, 1054 (9th Cir. 1982). There, we addressed the appropriate standard of proof for the tolling provision in 18 U.S.C. § 3290, a statute applicable to persons fleeing the commission of a crime. *Id.* at 1052. Holding that the preponderance stan-

dard was the appropriate one, we observed that even though proving the factual element of the provision was necessary to convict, "[a] major reason for adhering to the 'reasonable doubt' standard is absent . . . when the evidence offered to prove a defense is unrelated to the issue of guilt." *Id.* at 1054. Thus, while the elements of §§ 803(g)(2)(A)-(C) were necessary to convicting Renderos, they did not need to be proven beyond a reasonable doubt because they did not bear upon his guilt vis-a-vis his innocence, such that there was the risk of an "innocent [man] . . . being condemned." *See In Re Winship*, 397 U.S. at 364.

**[9]** Therefore, the California Court of Appeal was not objectively unreasonable in its application of Supreme Court due process law in rejecting Renderos's claim.

### C.

During trial, the court admitted evidence of Renderos's statement to Ryan wherein Renderos attempted to have Ryan secure him a young girl for a sexual encounter.[4] Renderos

---

[4]The relevant portion of the transcript reads:

[Renderos] Q: Hey, do you know any — any ho's [sic] Man? Fix me up.

[Ryan] A: No, I don't know no ho's.

Q: Fix me up, Man.

A: I'll see what I can do.

Q: Fix me up.

A: I'll see what I can do.

Q: Something nice, and about 18, you know?

A: Yeah.

Q: I can, you know, legal.

[Ryan] Q: You don't want 'em younger, maybe?

A: Well I don't know. Am I — Oh, you know? Never know.

claims that these statements were the only ones admitted for "corroboration" as required in Section 803(g), but were prejudicial because they showed "propensity." He also claims it was error to fail to give a limiting instruction once the evidence was admitted.

The trial court rejected defense counsel's objections, stating "In reading so far the areas of objection, especially page thirteen, I think it goes far to describe the relationship between the alleged victim and defendant. And I think it is relevant to the charges."

The California Court of Appeal held:

> Initially, we note that in seeking to exclude this portion of the transcript, appellant did not raise any "propensity" argument nor did he request the trial court to caution the jury on the use of the evidence. (*See People v. Bolin* (1998) 18 Cal. 4th 297, 327-328 [trial court has no sua sponte duty to instruct the jury as to the use of other crimes evidence].) In any event, we need not address whether the trial court should have allowed into evidence the challenged part of the tape. Assuming for the sake of argument that the trial court should have excluded the challenged evidence, the error was harmless beyond a reasonable doubt. The prejudicial effect of the evi-

Q: All right.

[Renderos] Q: See what you can do, Man.

[Ryan] A: All right.

Q: You know I like my pussy, Bubba.

A: All right.

Q: Whenever you want to talk. Whenever you have problems, call me, Man. Call me.

dence was minimal given that it "was no stronger and no more inflammatory than the [evidence] concerning the charged offenses." (*People v. Ewoldt* (1994) 7 Cal. 4th 380, 405.) It is unlikely the "jury might [have] doubted that [Renderos] committed the charged offenses but convicted anyway because of a belief he committed [any] uncharged crimes." (citation omitted.). Accordingly, reversal on this basis is not warranted.

*Renderos*, p. 23.

**[10]** Renderos's principal objection to this holding is that it does not address the due process claim and that the inclusion of the transcript altered the jury's perception of his credibility. We disagree. A successful petition for collateral relief rooted in a claim of trial error must demonstrate actual prejudice, that is, a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 758 (1946)). Renderos neither establishes that the evidence had a "substantial" effect on the jury nor proves how excluding the challenged portion would have detracted from the damning — and unchallenged — admissions contained in the balance of the transcripts. *Cf. Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (concluding that erroneous admission of evidence of victim's violent character was harmless because defendant could not show a substantial influence on the jury's verdict). Furthermore, the challenged transcript is ambiguous in that Renderos did not accept Ryan's offer of a girl under 18, and Renderos said he wanted something "legal."

**[11]** Therefore, the Court of Appeal did not err in holding that there was no constitutional violation.

## D.

Renderos contends that he was prejudiced by the testimony of the victim's mother, and the trial prosecutor's subsequent

reference to the statement during closing. The transcript reads in relevant portion:

Q:   What kind of relationship did you have with your son, Ryan?

A:   Ryan had some signs of dysfunction. There was no doubt. He had some anger issues. I took Ryan to see psychologists. I took him to psychiatrists . . . . I didn't know what the problem was with Ryan . . . . [¶] He's never been in trouble outside of our home. Everything has always been centered in our home. He would get angry, punch the door, hit the wall, things like this. I didn't know why.

Q:   You are saying this all occurred approximately around 1992?

A:   No. It started a little time later . . . . [¶] It started later.

Q:   It's fair to say that this type of behavior was never present in Ryan before?

A:   No.

Q:   1992?

A:   No, both of my boys, and I say both of my boys have had problems, both of my boys have been molested.

The trial court sustained a motion to strike and instructed the jury to disregard the last sentence. The prosecutor then referred to this testimony during her closing argument to the jury:

> I think what you saw from [victim's mother] was some really righteous emotion on the witness stand. She was upset . . . . What she said, you know, was emotional. I don't think you can read that to say she was somehow making these things up to help the case along. . . . When we are talking about, you know, credibility, you can look at the witness' demeanor while they are testifying. You can look at Lisa . . . what she did, what she said, her emotions.

The Court of Appeal rejected Renderos's argument that the testimony and the later reference constituted prosecutorial misconduct:

> The record does not contain any evidence that the prosecutor knew or should have known Lisa was going to mention both her sons had been molested. Moreover, the trial court directed the jury to disregard the testimony, and we assume the jury followed that instruction. (*People v. Sanchez* (2001) 26 Cal. 4th 834, 852.) Further, Renderos did not object or request any cautionary instruction regarding either Lisa's conduct or the prosecutor's references to the emotional nature of Lisa's conduct on the witness stand. In any event, to the extent any of the challenged comments were erroneous or inappropriate, it is not reasonably probable a different result would have been reached in the absence of those remarks. (*People v. Watson* (1956) 46 Cal. 2d 818, 835.)

*Renderos*, p. 25.

On a petition for a writ of habeas corpus, the standard of review for a claim of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnolly v. DeChristoforo,* 416 U.S. 637, 642 (1974)). Thus, to succeed, Renderos must demonstrate that it

"so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnolly*, 416 U.S. at 643.

**[12]** Renderos claims that under *People v. Bentley*, 131 Cal. App. 2d 687, 690 (Cal. Ct. App. 1955) *overruled on other grounds by People v. White*, 50 Cal. 2d 428 (1958), the prosecution had the affirmative duty to ensure that its witnesses did not volunteer inadmissible statements. However, in *Bentley*, in response to a question on direct examination, a police officer testified that he had questioned the defendant in a previous child molestation case. *Id.* at 689. Here, the statement was elicited by defense counsel during cross examination. Furthermore, the testimony does not engender the degree of prejudice at issue in *Bently*. Lisa C. never stated she thought Renderos had molested her other son, and in any event the court gave an instruction to disregard the statement to which Renderos neither objected nor sought a stronger admonition. *See Kennedy v. Lockyer*, 379 F.3d 1041, 1061 n.3 (9th Cir. 2004) (juries are presumed to have followed court's instruction). During the closing, the prosecutor merely referred to the emotion of Lisa's testimony and did not repeat that both of her sons had been molested. Given the telephone transcripts, which are more likely than not the principal basis upon which Renderos was convicted, the mere erroneous inclusion of inconsequential statements is insufficient to demonstrate that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643.

### E.

Renderos claims that trial counsel was ineffective and his errors prejudicial. However, there was no attempt to set forth the legal standards for such a challenge nor an attempt to meet them. We therefore deem the issue waived. *See Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1993).

## F.

Renderos contends that the errors should be considered cumulatively and not individually. However, the only issue identified above that might have been erroneous but deemed not prejudicial is the admission of the testimony of Renderos's solicitation of Ryan to procure a young girl for sex. None of the other errors identified in the brief was disposed of solely on the grounds of failure to prove prejudice. Even assuming that Lisa's testimony should have been stricken, Renderos does not argue how those two errors, even considered together, overcome the cumulative weight of the balance of the evidence against him.

## III.

Thus, the California Court of Appeal's denial of relief was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent in holding that CAL. PEN. CODE § 803(g) was not a violation of the Ex Post Facto Clause under *Stogner*, nor in any of the other assignments of error. We also deny Renderos's request to expand the COA to include uncertified claims.

AFFIRMED.