Filed 11/13/14  P. v. McAlpine CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RONALD KEITH McALPINE et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B249225<br>(Super. Ct. No. MA055863)<br>(Los Angeles County) |

Ronald Keith McAlpine and Ocariz Nicole Miles appeal from a judgment entered after they were found guilty by a jury of using a firearm in making criminal threats to Tamara Bowden (count 1) and to Vincent Hennings (count 2), a violation of Penal Code sections 422 and 12022.5, subdivision (a).[1] They were also found guilty of being felons in possession of a firearm (counts 3 and 4), a violation of section 29800, subdivision (a)(1).  For purposes of applying the three strikes law under section 1385, the trial court struck two prior serious or violent felony convictions that were admitted by McAlpine as well as six prior felony convictions that had resulted in a prison term.  McAlpine was sentenced to a

---

[1] Statutory references are to the Penal Code unless otherwise specified.

total of 29 years, 8 months in prison for the offenses and a "serious felony" enhancement that was applied to both counts 1 and 2. Miles was sentenced to a total term of six years, eight months. McAlpine and Miles contend the evidence is insufficient to support their convictions for criminal threats and claim errors in the jury instructions and evidentiary rulings by the court warrant reversal of the judgments against them. We modify the judgment as to Miles and remand as to McAlpine for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 9, 2009, Vincent Hennings was visiting his cousin Tamara Bowden and other relatives who had gathered at Bowden's apartment. Hennings saw McAlpine and Bowden arguing in the parking lot. When Bowden walked away from the quarrel, McAlpine challenged Hennings to a fistfight. They briefly traded punches. McAlpine then ran upstairs to the apartment he shared with his girlfriend Miles and a friend Terrell Burch. Miles was standing on the balcony overlooking the parking lot.

Bowden said that Miles handed McAlpine a sawed off shotgun and that he pointed it at her and Hennings and said, "Y'all motherfuckers are about to die." Bowden said Miles then took the shotgun back from McAlpine and said, "Y'all going to have holes in your body." Hennings said he was concerned for himself and for some young children who were playing in the parking lot. He hustled the youngsters into Bowden's apartment where everyone remained until law enforcement arrived. Bowden told police she was afraid for her life and feared that she would be shot. Burch said he saw the shotgun in McAlpine's and Miles' apartment and saw McAlpine on the balcony pointing the gun toward the parking lot. He did not say he saw Miles handle the shotgun.

## DISCUSSION

### *Sufficiency of the Evidence to Support the Convictions*

McAlpine and Miles contend their convictions for making criminal threats must be set aside because the evidence was insufficient to support a finding

2

that the victims suffered "sustained fear" as a result of the threats.  Miles also claims the evidence is insufficient to support the jury's finding that she personally used a firearm to threaten Bowden and Hennings.  We disagree.

One of the elements of the crime of making criminal threats is that the threat actually caused the person threatened to be in sustained fear for the safety of himself or his family.  (*In re George T.* (2004) 33 Cal.4th 620, 630; *People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)  The element of sustained fear is satisfied "where there is evidence that the victim's fear is more than fleeting momentary or transitory."  (*People v. Culbert* (2013) 218 Cal.App.4th 184, 190-191; *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1347.)

"Any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment . . . ."  (§ 12022.5, subd. (a).)  "Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies."  (*Alvarado v. Superior Court* (2007) 146 Cal.App.4th 993, 1001.)  "There are no precise formulas, or particular fact patterns to follow, to determine whether a gun has been 'used' for purposes of a sentence enhancement."  (*Id.*, at p. 1002.)

We must uphold the verdict and the finding if there is any substantial evidence to support it.  (*People v. Ledesma* (2006) 39 Cal.4th 641, 723.)  Substantial evidence is evidence that is reasonable, credible, and of solid value.  (*People v. Solomon* (2010) 49 Cal.4th 792, 811.)  We view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  (*Ledesma*, *supra*, at p. 722.)  We defer to the credibility determinations of the trier of fact.  (*People v. Richardson* (2008) 43 Cal.4th 959, 1030.)

3

Substantial evidence supports the jury's implied finding that Bowden and Hennings were in sustained fear for their safety and the safety of their younger family members. McAlpine argued with Bowden and then challenged Hennings to fight. After trading punches, McAlpine ran upstairs, was handed a sawed off shotgun by Miles, pointed it at Bowden and Hennings and threatened to kill them. Miles repeated the threat. Hennings and Bowden testified they feared for their lives and removed themselves and their family members from harm's way by retreating into Bowden's apartment until law enforcement arrived.

Substantial evidence also supports the jury's finding that Miles used a firearm when she threatened to kill Bowden and Hennings. According to Bowden, after McAlpine said, "Y'all motherfuckers are about to die," Miles took the shotgun from McAlpine and told Bowden, Hennings and others, "Y'all going to have holes in your body." Bowden said she believed Miles was going to shoot her and took shelter with Hennings and the children in Bowden's apartment. It is reasonable to conclude that a person who threatens to shoot holes in someone while holding a sawed-off shotgun is "using a firearm in the commission of a felony."

*Evidentiary Rulings*

*Prior Testimony of a Witness*

Following an evidentiary hearing, the court denied Miles' motion to exclude the testimony Hennings gave at the preliminary hearing. The trial court concluded prosecutors had demonstrated due diligence in attempting to procure Hennings' presence for the trial. Miles and McAlpine dispute the finding and contend reading Hennings' testimony to the jury violated their due process right to confront witnesses. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) We disagree.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." (U.S. Const., 6th Amend.) This right applies to both federal and state prosecutions. (*Pointer v. Texas* (1965) 380 U.S. 400, 401, 406.)

4

Nevertheless, the constitutional right to confront witnesses is not absolute. (*People v. Herrera* (2010) 49 Cal.4th 613, 621.) An exception exists where a witness is unavailable but has given testimony at a previous judicial proceeding against the same defendant and was subject to cross-examination. (*Ibid.*) "Pursuant to this exception, the preliminary hearing testimony of an unavailable witness may be admitted at trial without violating a defendant's confrontation right." (*Ibid.*) This traditional exception is codified in Evidence Code section 1291, subdivision (a)(2). (*People v. Herrera*, *supra*, at p. 621.)

A witness is unavailable if he or she is absent from the hearing and the proponent of the witness's prior testimony has "exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." (Evid. Code, § 240, subd. (a)(5).) It was the prosecutors' burden to demonstrate unavailability.

We independently review the prosecution's claim of good faith and reasonable diligence. (*People v. Herrera*, *supra*, 49 Cal.4th at p. 623; *People v. Cromer* (2001) 24 Cal.4th 889, 901.) Factors that the court should consider in determining whether the prosecutor has shown reasonable diligence include the timeliness of the search, the importance of the witness's testimony, and whether leads to the witness's possible location were reasonably explored. (*People v. Thomas* (2011) 51 Cal.4th 449, 500.)

Hennings testified and was cross-examined at a preliminary hearing on April 25, 2012. The matter was set for trial on January 7, 2013, and then continued to January 25, 2013, over Miles' and McAlpine's objection. On January 3, 2013, the prosecutor's investigator began looking for Hennings to serve him with a subpoena to appear at the trial. On January 22, 2013, the People announced they were unable to proceed and the case was dismissed. The information was refiled and McAlpine and Miles were rearraigned.

In the months following the refiling of the information, the prosecutor's investigator Chris Hodek or a member of his team went to Hennings'

5

last known address, found his apartment empty and got no help from neighbors about his whereabouts. They contacted Hennings' mother several times and obtained her agreement to put her son in touch with investigators although she never did. They met with Hennings' cousin Bowden and spoke to neighbors at her former residence. Hodek's team searched law enforcement data bases, the admitting records of two hospitals, records of the Los Angeles County Coroner's Office and the Department of Motor Vehicles. Hodek looked for postings by or about Hennings on Facebook and MySpace. Hodek's team followed up on a call from a person who claimed to be Hennings and promised he would appear in court. The man refused however to provide an address or to meet with Hodek. A search of a reverse telephone directory took investigators to a vacant trailer in a mobile home park in Palmdale. The trial court concluded the prosecution exercised due diligence and we agree.

"An appellate court 'will not reverse a trial court's determination [under Evidence Code, section 240] simply because the defendant can conceive of some further step or avenue left unexplored by the prosecution. Where the record reveals, . . . that sustained and substantial good faith efforts were undertaken, the defendant's ability to suggest additional steps (usually, as here, with the benefit of hindsight) does not automatically render the prosecution's efforts "unreasonable." [Citations.] The law requires only reasonable efforts, not prescient perfection.' [Citations.] 'That additional efforts might have been made or other lines of inquiry pursued does not affect [a] conclusion [there was due diligence.] It is enough that the People used reasonable efforts to locate the witness.' [Citation.]" (*People v. Diaz* (2002) 95 Cal.App.4th 695, 706.)

*Miles' Statements When She Was Arrested*

The parties agreed before trial commenced that a deputy sheriff who questioned Miles would not be called to testify about what Miles said on the day she was arrested. The agreement was to avoid complications that arise when a nontestifying codefendant's extrajudicial statements inculpate the other defendant.

6

(See *Bruton v. United States* (1968) 391 U.S. 123.) The risk to be avoided was that Miles would repeat her statement to the arresting officer that she simply took the shotgun away from McAlpine so no one would be hurt and that only McAlpine brandished the weapon and threatened to kill Bowden and Hennings.

The deputy sheriff was forewarned by the prosecutor but during cross-examination by Miles' counsel she was asked, "whether she had any information or confirmation that Miles's fingerprints were ever found either on the shotgun or its case." The deputy's unexpected response was, "I don't know about her fingerprints, Sir. She told us the shotgun was hers." The trial court sustained the objection of counsel, ordered the response stricken from the record and instructed the jury to disregard the statement. The motion of Miles' counsel for a mistrial was denied. The court would not permit Miles' counsel to elicit further testimony from the deputy sheriff about what Miles said because it inculpated McAlpine.

Granting or denying a motion for a mistrial is reviewed for an abuse of discretion. (*People v. Ledesma*, *supra*, at p. 683; *People v. Cox* (2003) 30 Cal.4th 916, 953, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Ordinarily, an instruction to disregard testimony that has inadvertently come to the attention of the jury is sufficient to cure the problem. (*People v. Navarrette* (2010) 181 Cal.App.4th 828, 834.) Only exceptional circumstances cause irreparable damage. (*People v. Hines* (1997) 15 Cal.4th 997, 1038.)

Here, Miles' statement that the weapon was hers was not an admission of any of the elements of the crime of making a criminal threat or the special allegation of using a firearm in doing so. As to these counts, it did not matter who owned the gun. As to the count of being a felon in possession of a firearm, the remark attributed to Miles may have been incriminating but it was of no consequence. The sentence for her conviction on this count was eight months in prison but it was to be served concurrently with the consecutive terms to be served for her convictions on counts 1 and 2. It was also of no consequence because Miles'

7

roommate Burch testified he saw the shotgun in the apartment before the incident and saw McAlpine pointing it downward from the balcony.

In any event, the mistake was inadvertent and the unanticipated response from the deputy was not produced by any misconduct by either the prosecutor or defense counsel. The mistake was harmless and was cured by the court's instruction. Finally, it was not error to proscribe questions to the deputy that would have produced hearsay statements by Miles that tended to exonerate her but inculpate McAlpine. "A defendant in a criminal case may not introduce hearsay evidence for the purpose of testifying while avoiding cross-examination." (*People v. Edwards* (1991) 54 Cal.3d 787, 820.)

*Instructional Error*

*CALCRIM No. 1300*

McAlpine and Miles assert that the trial court's instruction to the jury on criminal threats was ambiguous because it permitted them to convict each defendant based upon what their codefendant said. The instruction, as given, states in part: "The defendants are each charged with having made a criminal threat. [¶] To prove that *the* defendant is guilty of this crime, the People must prove that: [¶] 1. *The* defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to Vincent Hennings and Tamara Bowden[.] [¶] 2. *A* defendant made the threat orally[.] [¶] 3. *A* defendant intended that *his or her* statement be understood as a threat." (CALCRIM No. 1300, italics added.)

In reviewing claims of instructional error or ambiguity, "[w]e presume jurors generally understand and follow instructions" (*People v. Myles* (2012) 53 Cal.4th 1181, 1212; *People v. Yeoman* (2003) 31 Cal.4th 93, 139) and "consider the instructions as a whole to determine whether there is a reasonable likelihood the jury was misled" (*People v. Tate* (2010) 49 Cal.4th 635, 696). "'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.'" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111-1112.) "When reviewing ambiguous instructions, we

8

inquire whether the jury was 'reasonably likely' to have construed them in a manner that violated the defendant's rights." (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 214.)

McAlpine and Miles forfeited the claimed error by not objecting to the instruction or requesting a modification or amplification. (*People v. Lee* (2011) 51 Cal.4th 620, 638.) A trial court is not required to revise an accurate statement of the law without a request from counsel. (*Ibid.*) If either Miles or McAlpine thought the language used by the court might be misleading, they were obligated to request a clarification or additional instruction to cure the ambiguity.

In any event, there was no instructional error.

In reviewing claims of instructional error, we decide whether McAlpine and Miles have shown a reasonable likelihood that the jury, considering the challenged instruction in the context of the instructions as a whole, understood that instruction in a manner that violated their constitutional rights. (*People v. Tate*, *supra*, 49 Cal.4th at p. 696; *People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.) Here, there is no reasonable likelihood that the jury misunderstood the instructions in a way that led them to convict Miles for the words and actions of McAlpine, or vice versa. Viewed in context, the trial court's use of "the" or "a" when reading CALCRIM No. 1300, simply reflected that there was a count for each defendant and each victim.

Moreover, the trial court instructed the jury with CALCRIM No. 203, which told the jury it "must separately consider the evidence as it applies to each defendant." The trial court also read CALCRIM No. 3515 that instructed jurors to consider each count separately and to return a separate verdict for each count. Separate verdict forms were completed by the jury for counts 1 and 2 that state the name of the defendant and the corresponding victim. For example, "(Count 1 – Guilty) We, the jury . . . , find the Defendant OCARIZ NICOLE MILES, GUILTY of the crime of CRIMINAL THREATS, [against] alleged victim TAMARA

9

BOWDEN[.]" This format was repeated for Vincent Hennings. Two other verdict forms addressed McAlpine's guilt or innocence.

Assuming, arguendo, the trial court erred the error was harmless under any standard of review. (See e.g., *Neder v. United States* ( 1999) 527 U.S. 1, 17-18 [overwhelming evidence rendered alleged instructional error harmless beyond a reasonable doubt]; *People v. Breverman* (1998) 19 Cal.4th 142, 177-178 [harmless error].) The uncontradicted testimony of Bowden and Hennings shows that McAlpine challenged Hennings to fight and minutes after an intense struggle with him ran upstairs and was handed a sawed off shotgun by Miles. McAlpine and Miles then shouted down to Bowden and Hennings that they were going to be shot and killed.

*Unanimity Instruction*

The discussion about claimed ambiguities in CALCRIM No. 1300 dispose of McAlpine's and Miles' argument that there could be more than one factual basis for a conviction.

*Sentencing Errors*

The People concede that Miles is entitled to 63 days of work time credit instead of the 62 days that were awarded by the court. As to McAlpine, the People concede the trial court erroneously imposed two section 667, subdivision (a)(1) "serious felony" enhancements of five years to the determinate sentences on both counts 1 and 2. (*People v. Williams* (2004) 34 Cal.4th 397, 402 ["at sentencing a trial court must impose a sentence enhancement for a prior felony conviction – including a section 667 [subdivision] (a) enhancement – only once, regardless of the number of new felony offenses"].) The enhancement to McAlpine's sentence was 10 years longer than it should have been.

DISPOSITION

We modify the judgment to reflect that Miles is entitled to a total of 63 days of presentence custody credit, instead of 62. McAlpine's sentence is modified to strike one of the two, five-year enhancements as to count 1 and to strike

10

one of the two, five-year enhancements as to count 2. The Superior Court Clerk shall amend the abstract of the judgment to reflect these modifications and shall forward an amended copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


BURKE, J.[*]

We concur:


GILBERT, P. J.


YEGAN, J.

---

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

John A. Murphy, Judge

Superior Court County of Los Angeles

_____

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant Ronald Keith McAlpine.

Gideon Margolis, under appointment by the Court of Appeal, for Defendant and Appellant Ocariz N. Miles.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Michael C. Keller, Deputy Attorney General, for Plaintiff and Respondent.