Filed 10/29/20  P. v. Rogers CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ERIC OLIVER ROGERS,<br><br>        Defendant and Appellant. | A154512<br><br>(Solano County<br>Super. Ct. No. FCR 334209) |

A jury found defendant Eric Oliver Rogers guilty of one felony count of willful infliction of corporal injury to a current or former dating partner and two misdemeanor counts of vandalism.  He was sentenced to four years in state prison.

Defendant contends (1) the trial court erred in denying his motion to sever trial of one of the vandalism charges from the trial of the other two charges, (2) the jury improperly heard evidence that defendant had been in prison due to the prosecutor's failure to adequately admonish a witness, (3) the trial court erred in failing to instruct the jury on the lesser offense of simple assault, and (4) the trial court erred in instructing the jury on flight. We will affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2016 and 2017, Kristy Moore lived in her mother's house in a room that had been the garage.  Moore's two sons also lived in her mother's house.

Moore and defendant were in an on-and-off dating relationship for two years starting in 2014, and Moore described defendant as her "ex-boyfriend." In September 2017, Moore was not dating defendant, but she was still in contact with him.

Ricky Cunningham has known Moore since they were in school, and they dated on and off.[1]

In December 2017, the Solano County District Attorney charged defendant with injuring Moore, a person with whom he had a current or former dating relationship (Pen. Code,[2] § 273.5, subd. (a); count 1), misdemeanor vandalism involving damage to Cunningham's property (§ 594, subd (b)(2)(A); count 2), and misdemeanor vandalism involving damage to Moore's property (*ibid.*, count 3).

A jury trial was conducted in March 2018. The jury found defendant guilty of all charges.[3] The following testimony was presented at trial.

Vandalism in September 2017 (Count 2)

Cunningham testified that around 4:00 a.m. on September 9, 2017, Moore called him and wanted him to see if defendant was outside her house.[4]

---

[1] Cunningham testified he and Moore had a "solid" relationship for "a little bit" and then were on-again, off-again. Moore testified she had dated Cunningham on and off throughout her adult life. She described him as "kind of a neighbor, and he's a good friend."

[2] Further undesignated statutory references are to the Penal Code.

[3] The jury also found true the allegation that defendant served a prior prison term (§ 667.5, subd. (b)).

[4] In her subsequent testimony, Moore confirmed that she called Cunningham to ask if he could check whether defendant was outside her home. She testified she was concerned about defendant because "He was making a lot of loud banging and threats, and he had broken into [her] room earlier that day, the day before."

At this time, Moore was Cunningham's friend (not dating partner). He drove near Moore's residence and parked either "two or three houses up" or "at least two blocks" from her house. Cunningham could see defendant riding his bicycle back and forth around Moore's house.

Defendant rode his bike up to Cunningham's car. Then defendant rode away toward Moore's house. Cunningham started his car and made a U-turn to drive home. In his rearview mirror, Cunningham saw defendant "coming back to me" and then his passenger's side back window panel shattered. Cunningham looked back to see what happened and did not see anyone next to his car or in the area. He reported this incident to the police right after it happened.

Vandalism in November 2017 (Count 3)

Moore's son Kyle testified he was at home in his grandmother's house on November 17, 2017. His grandmother was home, but Moore was not. Around 2:00 or 3:00 in the morning, he saw defendant outside the house. Kyle saw defendant walk in the direction of Moore's room (i.e., toward the garage) and a few seconds later, he heard loud banging at the window to Moore's room. Kyle called the police, and when an officer drove up, Kyle pointed the officer in the direction he believed defendant had gone. At that time, the window to Moore's room was not broken.

About an hour or two later, Kyle looked out his window and saw defendant sitting on the front porch. Kyle opened the door and asked defendant what he was doing there. Defendant said he didn't want the police involved, and he wasn't a bad guy. Kyle shut the door on defendant. Less than a minute later, Kyle heard banging on the walls and a window shattering. Kyle called the police a second time.

In cross-examination, Kyle testified the window shattered around 3:00 or 4:00 a.m. and he did not see defendant break the window. He was in his bedroom and could not see his mother's room from his bedroom. Kyle also admitted he was convicted of first degree residential burglary in 2016 and was on probation until 2019.

Moore testified that when she came home later that day (November 17), the window to the garage, which was her room, was broken, and all her dressers were pushed over. She said, "[E]verything was amiss."

Injury to a Current or Former Dating Partner in November 2017 (Count 1)

Moore testified that in the late afternoon or early evening of November 19, 2017, defendant contacted her. Defendant told Moore he had phones to return to her, and she agreed to meet him near his house.[5]

Moore drove to defendant's house at 9:00 p.m. that day. Defendant got in the front passenger seat of her car. Defendant wanted Moore to take him to a park nearby, and she agreed because he was very persistent. Then she drove to the parking lot of a 99 Cents store and parked. Defendant was screaming at Moore about her phone. He wanted to see her cell phone and see who she was talking to. Moore testified that defendant said to her, "You're fucking somebody but not fucking me."

Moore was scared by defendant's behavior. She let defendant see her phone to calm him down. She tried to get out of the car to get a pack of cigarettes. Defendant reached over and locked the driver's door and yelled that Moore was not going anywhere. At some point, defendant tried to take

---

[5] Moore explained that, after a friend left two phones at her house, Moore left the phones on the front porch, so the friend could pick them up if she wasn't home. Moore testified that defendant took the phones from her porch the night/early morning that her window was broken.

away Moore's keys, they struggled for the keys, and during the struggle, Moore honked her horn a few times. Moore unlocked her door, and then defendant punched her in the nose. Blood "gushed" from her nose, and there was a gash on the bridge of her nose caused by a ring defendant wore on his middle finger.

Moore got a handkerchief to stop the flow of blood. She testified, "[Defendant] was still in the car. And they said that they were going to call the cops. A store owner came up from a store down the way and said, 'Well, you better leave.' And so he took off running, and I got in the car."

After defendant punched her, Moore drove home. She went to the police about two hours later to report what happened. A Vacaville police officer testified he took Moore's report around 12:40 a.m. on November 20. At the time, a laceration on the bridge of Moore's nose was still "actively bleeding," and one cheek had some redness.

In response to defense counsel questioning, Moore testified a friend (not Cunningham) convinced her to go to the police that day, and Cunningham drove her to the police station to make the report.

Moore testified about a prior incident of domestic violence from August 2016, which the court admitted under Evidence Code section 1109. She was in a relationship with defendant at the time, and he was in her room early that morning. Defendant woke Moore up. He was looking at Moore's phone and accusing her of cheating on him. Defendant was very angry and screaming. He called Moore a bitch and said he was going to kill her. Moore testified that she denied cheating on him, and then defendant "came at me when I was on my bed, and he put his hands on my throat, and he choked me. And then he actually lifted me like by my throat, and I almost passed out." Defendant had his hands around Moore's neck for 30 seconds. Defendant

5

also hit Moore in the chest. Later that morning, Moore's mother came to her room, Moore told her what happened, and her mother called the police.

In cross-examination, Moore testified defendant choked her sometime between 5:00 and 7:00 a.m. and then defendant went to sleep. She had her cell phone with her in the room, but she did not try to call anyone. When she reported the incident, Moore did not tell the police that defendant had his hands on her neck for 30 seconds because they didn't ask. Moore testified defendant blocked the way to get out of her room, but she did not tell the police that defendant restrained her in her room, again because they did not ask.

Defense counsel also elicited testimony from Moore about an incident in July 2014 during which she lied to a Vacaville police officer. The officer asked Moore if she had anything in her mouth, and she said that she did not. In fact, Moore had a baggie in her mouth that contained methamphetamine. Moore testified the officer choked her and made her spit it out. Moore was dating defendant at the time, but when she was arrested, she identified Cunningham as her emergency contact.

In addition, Moore admitted her driver's license was suspended at the time she drove defendant to the 99 Cents store parking lot in November 2017, and the prosecution granted her use immunity for her testimony at defendant's trial.

Defense

The defense called the officer who responded to Moore's residence in August 2016 and took her report (the other act of domestic violence). The officer testified he believed Moore told him that defendant did not choke her. Moore did not tell the officer she was restrained in her room during the incident, and the officer did not observe any bruising on Moore's neck or

6

injuries to her chest. When the officer contacted defendant, he was cooperative and calm.

The defense also called the officer who made the traffic stop in July 2014 and discovered the baggie in Moore's mouth. He corroborated Moore's testimony that he grabbed her and applied pressure to her neck until she spit out a small plastic baggie with a white crystalline substance inside.

In closing, defense counsel argued Cunningham, Kyle, and Moore were unreliable witnesses with a motive to lie, and he suggested the offenses alleged simply did not happen. He suggested Cunningham influenced Moore to make a false report of domestic violence and implied that Cunningham viewed defendant as a romantic rival.

## DISCUSSION

A. *Failure to Sever Trial of Count 2*

1. Background

Defendant filed a motion to sever the trial of the two misdemeanor vandalism charges (counts 2 and 3) from the trial of the felony domestic violence charge (count 1). He argued severance was appropriate because the misdemeanor charges occurred on separate dates from the alleged felony offense and because trial of the three charges together would impermissibly inflame the jury, prejudice defendant's right to testify, and allow prejudicial evidence that would otherwise be inadmissible if the misdemeanor charges were tried separately from the felony charge.

The trial court denied the motion to sever, reasoning, "[T]here's no really substantial danger of prejudice shown by the defense and this evidence is all crossly admissible on the issue of motive under [Evidence Code section] 1101(b). So that's the strongest argument in favor of consolidating the counts. They all relate to Krist[y] Moore."

7

The issue of severance came up again in a later pretrial hearing. Defense counsel asked the court to dismiss count 3, the misdemeanor vandalism charge for which Kyle was the primary witness, on the ground that counsel had just learned Kyle was currently on probation for first degree burglary and the District Attorney's office had never disclosed Kyle's criminal history. The court denied the motion, and then defense counsel asked for severance of count 3 on the ground it was "a weak count now" "being bootstrapped with these other allegations to help support it." The court stated it was denying the motion to sever count 3 for the same reasons it denied defendant's previous severance motion to sever count 1, that is, "This evidence is crossly admissible."

2.    Applicable Law and Standard of Review

Section 954 provides in relevant part, "An accusatory pleading may charge two or more different offenses connected together in their commission, . . . or two or more different offenses of the same class of crimes or offenses, under separate counts . . . . [T]he court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately."

"In cases in which two or more different offenses of the same class of crimes or offenses have been charged together in the same accusatory pleading, . . . evidence concerning one offense or offenses need not be admissible as to the other offense or offenses before the jointly charged offenses may be tried together before the same trier of fact." (§ 954.1.)

"[C]onsolidation or joinder of charged offenses 'is the course of action preferred by the law.'" (*People v. Soper* (2009) 45 Cal.4th 759, 772.) We

8

review the denial of a motion to sever for abuse of discretion, and the appellant "must make a ' *"clear showing of prejudice"* ' "; the California Supreme Court has "observed that 'in the context of properly joined offenses, "a party seeking severance must make a *stronger* showing of potential prejudice than would be necessary to exclude other-crimes evidence in a severed trial." ' " (*Id.* at p. 774.)

"In determining whether there was an abuse of discretion, we examine the record before the trial court at the time of its ruling. [Citation.] The factors to be considered are these: (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case." (*People v. Mendoza* (2000) 24 Cal.4th 130, 161 (*Mendoza*), superseded by statute on other grounds as stated in *People v. Brooks* (2017) 3 Cal.5th 1, 63, fn. 8.)

3.     *Analysis*

On appeal, defendant contends the trial court erred in failing to sever trial of count 2, the vandalism charge involving Cunningham, from that of counts 1 and 3, offenses that involved Moore.

Initially, we find defendant's contention forfeited. As we have described, defendant moved to sever trial of count 1, the only felony charge, from trial of the two misdemeanor vandalism charges, and later he asked the court to sever trial of count 3, the vandalism charge for which Kyle was the primary witness, from the other charges. At no point, however, did defendant specifically ask the court to sever the trial of count 2 from the other charges.

9

We asked the parties for supplemental briefing on forfeiture. Defendant argues there was no forfeiture because "it was clear that [he] primarily sought to avoid the prejudice that resulted from joinder of the felony count and two unrelated misdemeanors" and "because the trial court was fully cognizant of its options and its duties with regard to the issue of severance, once the issue was brought to its attention." He cites the rule that a trial objection is sufficient if it fairly apprises the trial court of the issue it is being called upon to decide, suggesting the trial court in this case was sufficiently apprised of the need to sever count 2 from the other charges even though defendant did not ask the court to do so.

The Attorney General responds that a motion to sever trial of count 2 from the other charges "was simply not presented to the court." He points out that, under defendant's position, whenever a defendant moves to sever one charge from a multiple count information, the trial court would be required "to look at every possible combination of charges, and evaluate whether they should be severed . . . even if the defense had not asked the court to do so."

*People v. Mitcham* (1992) 1 Cal.4th 1027, cited by the Attorney General, is on point. In *Mitcham*, the defendant moved to sever his trial from that of his codefendant on one ground, then raised different arguments for severance on appeal. Our high court found the new arguments forfeited. (*Id*. at pp. 1048–1049 ["Defendant did not raise the arguments he now makes, nor does he presently claim that the trial court abused its discretion in rejecting his prior arguments. For this reason alone, we are required to reject defendant's challenge to the trial court's ruling"].) Defendant's appellate contention is forfeited.

Furthermore, on the merits, defendant's claim fails for failure to show it would be an abuse of discretion to decline to sever trial of count 2 from the trial of the other charges.

Defendant recognizes that counts 2 and 3, both misdemeanor vandalism charges, are "of the same class of crimes." Thus, it is not disputed that they meet the statutory requirements for joinder under section 954. Nonetheless, defendant argues joinder of counts 2 and 3 should not be permitted "unless cross admissibility is established," citing *Williams v. Superior Court* (1984) 36 Cal.3d 441, superseded by statute as stated in *Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1229, footnote 19 (*Alcala*). But the law is to the contrary: " 'a trial court may not *grant* severance, where the statutory requirements for joinder are met, solely on the ground that evidence in the joined cases is *not* cross-admissible.' " (*Alcala* at p. 1217, fn. 10.)[6]

In any event, the trial court in this case found evidence the three charges *were* cross admissible on the issue of motive because the conduct all related to Moore. We cannot say this was an abuse of discretion. (See *People v. Thompson* (2016) 1 Cal.5th 1043, 1114 [standard of review for a trial court's ruling on admission of evidence under Evidence Code section 1101 is abuse of discretion].) Evidence of defendant's former relationship with Moore and his domestic violence and vandalism offenses against her (i.e., evidence

---

[6] Section 954.1 provides that "evidence concerning one offense or offenses *need not* be admissible as to the other offense or offenses before the jointly charged offenses may be tried together before the same trier of fact." (Italics added.) Voters enacted section 954.1 in 1990 (after *Williams v. Superior Court*, *supra*, was decided), and since then, "much of the cross-admissibility analysis in *Williams* carries diminished persuasiveness." (*People v. Ybarra* (2016) 245 Cal.App.4th 1420, 1435, fn. 9.)

of counts 1 and 3) would be relevant in demonstrating a motive for defendant to vandalize the car of Cunningham, defendant's perceived rival, at a time when defendant was outside Moore's house, and Cunningham was nearby. And, as argued by the Attorney General, evidence of the relationships among defendant, Moore, and Cunningham was relevant to Cunningham's identification of defendant as the one who broke his window.

Moreover, it was within the trial court's discretion to find the three charges "connected together in their commission" under section 954. Offenses meet that definition when " ' "there is a common element of substantial importance in their commission, for the joinder prevents repetition of evidence and saves time and expense to the state as well as to the defendant." ' " (*Alcala*, *supra*, 43 Cal.4th at p. 1218, italics omitted.) This requirement is satisfied even when the offenses do not relate to the same transaction and are committed at different times. (*Ibid*.) That the offenses in this case all occurred in or near Moore's house and involved either Moore or a former dating partner of Moore are sufficient facts to find the three charges connected together in their commission under section 954.

Defendant asserts joinder of count 2 with the other charges was prejudicial because "the primary impact of evidence of the Cunningham incident was to show . . . [defendant] to be an impulsive, hostile and violent person." This argument appears to correspond with the factor "whether some of the charges are likely to unusually inflame the jury against the defendant." (*Mendoza*, *supra*, 24 Cal.4th at p. 161.) It would have been well within the trial court's discretion, however, to determine that count 2 was not unusually inflammatory.

Defendant also claims joinder combined "two weak cases that . . . unfairly and unreasonably booster each other." Our high court has

explained, "the issue is ' " 'whether strong evidence of a lesser but inflammatory crime might be used to bolster a weak prosecution case' on another crime." ' " (*People v. Simon* (2016) 1 Cal.5th 98, 124.) Here, the vandalism charge involving Cunningham was not particularly inflammatory, and the evidence of the more serious crime, felony corporal injury to a current or former dating partner, was not comparatively weak. The trial court would not have abused its discretion in declining to sever trial of count 2 on this ground had it been asked to do so.

Finally, we reject defendant's cursory claim that the trial court's failure to sever trial of count 2 from trial of the other charges caused such "overwhelming prejudice" that it denied him due process and a fair trial. We discern no overwhelming prejudice from the joinder of count 2 with counts 1 and 3.

B. *Admission of Evidence That Defendant Had Been in Prison*

1. <u>Background</u>

As to count 1 (corporal injury to a current or former dating partner), the district attorney alleged defendant suffered a prior conviction on February 23, 2015, for which he served a prison term. (Former § 667.5, subd. (b), as amended by Stats. 2014, ch. 442, § 10.) Defendant filed a motion to bifurcate the trial on the prison prior allegation, which the court granted.

In a pretrial discussion, defense counsel also moved to exclude any evidence of defendant having been in custody, noting that in discovery materials, there were references to witnesses saying defendant "just got out of jail." The court ruled that the prosecution would be precluded from asking questions designed to elicit that as a response. But the court told defense counsel, "If you ask a question on cross that would—that Ms. Moore would

13

have to lie about in order to comply with the Court's in limine ruling, I'm not going to require that she do so."

Following the court's ruling, the prosecutor stated, "When I grab the witnesses, as I get them, I'll advise them don't volunteer anything . . . that the defendant just got out of jail."

When Moore was called as a witness, she did not mention anything about defendant being in custody in the prosecutor's initial questioning. She testified that she dated defendant "[o]n and off since 2014." In cross-examination, defense counsel asked about specific times Moore and defendant broke up and got back together. In response to his question about when they next broke up after getting back together in August 2014, Moore testified, "He was—then he went to prison from August until January 2016." "So it's August of '14 to January 2016."

Defense counsel objected, moved to strike, and stated he had a motion to make. The court addressed the jury: "[F]olks, in terms of the witness's answer about the defendant going to prison, I am going to admonish you not to consider that for any purpose other than as part of her explanation as to why they broke up and got back together. It is not admissible for the truth of the prison commitment. Don't speculate about the nature of the prison commitment. Don't use it in any way, shape, or form in your evaluation of the case except as to explain the reason for the witness giving for why they broke up when they did."

The court then had an off-the-record discussion with counsel, during which defense counsel apparently made a motion for mistrial.

Later the same day, the court addressed defendant's motion for mistrial. The court asked the prosecutor whether Moore had been admonished not to refer to defendant's prior prison commitments. The

14

prosecutor responded that he told Moore, "we are not going to discuss any prior incidents," and he specifically remembered admonishing Cunningham "because I know that was part of the issue [defense counsel] was bringing to the Court's attention." The prosecutor, however, doubted that he gave the same instruction to Moore, explaining that in his review of the discovery, only Cunningham had referred to defendant just getting out of jail. The court observed, "So there could have been a failure to thoroughly admonish each witness."

In support of his mistrial motion, defense counsel argued Moore's reference to defendant's time in prison was "a devastating revelation" and the prosecution's failure to admonish their witnesses had deprived defendant of a fair trial. The prosecutor disagreed, arguing the court's "immediate curative and limiting instruction" remedied the situation.

The trial court denied the motion for mistrial, finding "given everything else that is in evidence, this is . . . not incurably prejudicial like the defense fears. There were no specifics. The jury has no idea why the prison commitment happened. And I have faith that they will follow my admonishments."

The court also granted defendant's motion to strike Moore's reference to prison, so if the jury asked for a read back it would not be in the record. The court stated its intention to instruct the jury that it struck Moore's response "and repeat the admonishment that they are not to consider the testimony for any purpose." Defense counsel, however, did not want the court to further admonish the jury regarding Moore's response.

2.     Analysis

Defendant argues Moore's reference to defendant being in prison was "extraordinarily prejudicial," warranting reversal. The Attorney General

15

responds that the trial court acted within its discretion in finding Moore's testimony not incurably prejudicial.[7]

"Whether in a given case the erroneous admission of . . . evidence [of a defendant's prior criminality] warrants granting a mistrial or whether the error can be cured by striking the testimony and admonishing the jury rests in the sound discretion of the trial court." (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1581.) " 'Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.' [Citation.] Accordingly, we review a trial court's ruling on a motion for mistrial for abuse of discretion." (*People v. Avila* (2006) 38 Cal.4th 491, 573 (*Avila*).)

"Ordinarily, a curative instruction to disregard improper testimony is sufficient to protect a defendant from the injury of such testimony, and, ordinarily, we presume a jury is capable of following such an instruction." (*People v. Navarrete* (2010) 181 Cal.App.4th 828, 834 (*Navarrete*).) For example, in *People v. Valdez* (2004) 32 Cal.4th 73, 124 (*Valdez*), a witness was instructed not to refer to the defendant being in custody, but the witness nonetheless testified that he interviewed the defendant at "Chino Institute." Our high court observed that the isolated reference to state prison "was not so grave that a curative instruction would not have mitigated any possible prejudice to defendant." (*Id*. at p. 125.) In *Avila, supra,* 38 Cal.4th at page 572, a witness was admonished not to refer to the criminal convictions of the

---

[7] In his reply, defendant argues the standard of review put forth by the Attorney General is incorrect and this court should determine "de novo" whether the error was prejudicial. To the extent defendant is suggesting we should apply some more favorable standard of review under which the judgment might be reversed even if the trial court properly denied his motion for mistrial, he offers no authority for this suggestion, and we reject it.

defendants, but the witness testified that a codefendant said defendant Avila " 'barely got out of prison.' " Avila moved for a mistrial based on the reference to his having been in prison. (*Ibid*.) The trial court denied the motion, finding "that striking the statement and admonishing the jury not to consider it in any way would remedy the problem," and our high court found no abuse of discretion. (*Id*. at pp. 572, 574.)

On the other hand, the Court of Appeal in *Navarrete, supra*, 181 Cal.App.4th at page 834 found the trial court abused its discretion in denying a motion for mistrial. There, after the defendant successfully moved to suppress a statement he made to detectives, a detective referred to the suppressed statement in his testimony. The trial court struck his testimony but denied the defendant's mistrial motion. (*Id*. at p. 831.) The detective's testimony was not mere inadvertence; while waiting to testify, the detective complained about the suppression order and "promised he 'was going to show' the court." (*Id*. at p. 832.) The detective's improper testimony left the impression the defendant had confessed, and under the circumstances, the appellate court concluded the trial court's curative instruction could not undo the damage inflicted by the rogue witness. (*Id*. at p. 834.) The court's conclusion was grounded in the particular persuasive force of a confession noting, " 'If the jury believes that a defendant has admitted the crime, it doubtless will be tempted to rest its decision on that evidence alone, without careful consideration of the other evidence in the case.' " (*Id*. at p. 835.)

The present case is more akin to *Valdez* and *Avila* than to *Navarrete*.[8] Moore's inadmissible testimony that defendant spent some time in prison

---

[8] Defendant argues that *Valdez* is distinguishable because the defendant in that case forfeited his claim. This does not help defendant because the Supreme Court's conclusion in *Valdez* that an admonition would

17

was not incurably damaging in the same way evidence of a confession would be. Rather, this was an "[o]rdinar[]y" situation where "a curative instruction to disregard improper testimony is sufficient to protect a defendant from the injury of such testimony." (*Navarrete*, *supra*, 181 Cal.App.4th at p. 834.) Accordingly, we conclude the trial court did not abuse its discretion in denying defendant's mistrial motion.

C.    *Failure to Instruct on Simple Battery*

In a discussion on jury instructions, the trial court stated it would instruct on the lesser offense of battery against a current or former dating partner (§ 243, subd. (e)(1)), but it did not see either simple battery (§§ 242, 243, subd. (a)) or simple assault (§§ 240, 241, subd. (a)) "warranted by these facts." Defense counsel suggested that an instruction on simple battery could be warranted if the jurors "don't believe Ms. Moore that they were in a relationship." The court was unconvinced observing, "there's really not evidence before the . . . jury that there wasn't a dating relationship."

Defendant claims the trial court erred in not instructing the jury on simple battery under section 242. He asserts, "Even though there was evidence that [defendant] and Moore had a dating relationship, whether to find that fact beyond a reasonable doubt was a question for the jury," and "While there was evidence [they] had dated several years before, since that time she had dated other men including Mr. Cunningham. The jury could have concluded that the current relationship was such that the crime was not one of domestic violence."[9]

---

have cured any harm from the improper testimony was a necessary determination to its finding of forfeiture.

[9] For purposes of both the charged offense of corporal injury to a person with whom the defendant has a current or former dating relationship and the lesser offense the jury was instructed on, battery against a person with whom

18

Defendant argues he was prejudiced by the failure to give an instruction on simply battery because "the evidence reasonably suggested the possibility that [he] had committed the lesser offense."

A trial court "must instruct the jury on lesser included offenses of the charged crime if substantial evidence supports the conclusion that the defendant committed the lesser included offense and not the greater offense." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 196.) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.)

Here, we do not believe there was substantial evidence to support determinations that defendant committed a battery against Moore but that he and Moore were never in a dating relationship; and in any event, defendant's claim fails for lack of prejudice. The jury heard from Moore that defendant was her ex-boyfriend and that they had been in a dating relationship for two years. She testified specifically about an incident in August 2016 when defendant was with her in her bedroom early in the morning (further evidence that they were in a dating relationship). Our review of defense counsel's cross-examination of Moore does not reveal any attempt to cast doubt on the existence of the dating relationship between Moore and defendant. In closing, defense counsel argued Moore had falsely

---

the defendant currently or previously had a dating relationship, a "dating relationship" is defined as "frequent, intimate associations primarily characterized by the expectation of affectional or sexual involvement independent of financial considerations." (§§ 243, subd. (f)(10), 273.5, subd. (b)(3).)

19

accused defendant in the past and "embellished" the prior act of domestic violence from August 2016, but he did not suggest Moore was lying about ever having been in a dating relationship with defendant in the first place. Rather, defense counsel suggested Moore made up the current allegation that defendant punched her in the nose at the urging of Cunningham. In short, the defense called into question Moore's testimony that defendant punched her in the nose but did not challenge her testimony that she and defendant had been in a dating relationship.

Defendant's claim also fails for lack of prejudice. The jury was instructed on the lesser included offense of battery of a current or former dating partner (§ 243, subd. (e)) but found defendant guilty of the charged offense of corporal injury to a current or former dating partner (*id.*, § 273.5). That means the jury found beyond a reasonable doubt that defendant "willfully inflict[ed] corporal injury resulting in a traumatic condition" upon Moore. (*Id.*, subd. (a).) Had the jury also been instructed on simple battery, it is not reasonably likely the jury would have determined that defendant punched Moore in the nose causing traumatic injury based on Moore's testimony but then rejected her testimony that she and defendant had been in a dating relationship. Thus, we conclude any error in failing to instruct the jury on simple battery in this case was harmless. (See *People v. Breverman*, *supra*, 19 Cal.4th at p. 165 [failure to instruct on a lesser included offense is not reversible error "unless an examination of the entire record establishes a reasonable probability that the error affected the outcome"].)

D.    *Instruction on Flight (CALCRIM No. 372)*

The prosecutor requested CALCRIM No. 372 based on "Moore's testimony on direct examination about how the defendant fled after striking

20

her." Defense counsel objected arguing there was insufficient evidence defendant fled. The court granted the prosecutor's request finding evidence defendant fled after the domestic violence offense was committed.

Defendant contends the trial court erred in giving the flight instruction because the only evidence of flight was Moore's uncorroborated testimony. We find no error.

"In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows: [¶] The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine. [¶] No further instruction on the subject of flight need be given." (§ 1127c.)[10]

"A flight instruction is proper whenever evidence of the circumstances of defendant's departure from the crime scene . . . logically permits an inference that his movement was motivated by guilty knowledge." (*People v. Turner* (1990) 50 Cal.3d 668, 694.) Here, Moore testified a store owner came up to her while her nose was bleeding and said "you better leave"; Moore also mentioned, "they were going to call the cops." She testified defendant then "took off running" even though he had arrived at the 99 Cents store parking

---

[10] The jury in this case was given a version of CALCRIM No 372 as follows: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."

21

lot in Moore's car.  This was sufficient evidence to permit an inference that defendant was motivated by guilty knowledge when he took off running from the parking lot.

Defendant concedes that "fleeing under such circumstances [i.e., the circumstances described by Moore] certainly would have warranted the flight instruction."  But he notes that the prosecutor did not call the store employee or owner to testify and asserts, "Moore's uncorroborated testimony that [defendant] fled the scene did not establish the factual basis for the jury to have considered those acts as indicative of a consciousness of guilt."  He cites no authority for this assertion, however, and the law is to the contrary. "Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact." (Evid. Code, § 411.)

For his position, defendant cites *People v. Rhodes* (1989) 209 Cal.App.3d 1471.  In *Rhodes*, this court observed, "a flight instruction is appropriate where there is substantial evidence of flight by the defendant *apart from his identification as the perpetrator*, from which the jury could reasonably infer a consciousness of guilt.  [Citations.]  Thus, for example, where there is independent evidence of flight as to which defendant's identity as the fleer is not in dispute, [a flight instruction] is proper."  (*Id*. at p. 1476.) The court made this observation in the context of examining *People v. Anjell* (1979) 100 Cal.App.3d 189 (*Anjell*), disapproved of by *People v. Mason* (1991) 52 Cal.3d 909, 943, fn. 13.)  In *Anjell*, the court reasoned, "The fact that a robber fled the scene is of no assistance to a jury where the defendant does not dispute that all elements of the crime were present but denies that he was the robber."  (100 Cal.App.3d at pp. 199–200.)  The *Rhodes* court explained, "This is so because where the defendant contests his identity as

22

the perpetrator, testimony that the perpetrator (whoever he was) fled the scene upon committing the crime does not, in any logical way, further *connect the defendant with the commission of the crime*." (209 Cal.App.3d at p. 1476, some italics added.)

On the other hand, our Supreme Court has recognized, "If there is evidence *identifying* the person who fled as the defendant, and if such evidence 'is relied upon as tending to show guilt,' then it is proper to instruct on flight." (*People v. Mason*, *supra*, 52 Cal.3d at p. 943, italics added.) The flight instruction was proper in this case because Moore identified defendant as the person who fled after punching her.

Defendant argues his defense that no crime occurred at all is analogous to the defense in *Anjell* that the defendant was not the robber. But under the reasoning of *Anjell* and *Rhodes*, Moore's testimony identifying defendant as both the perpetrator and the fleer is relevant to connect defendant to the commission of the crime. Indeed, we have seen that defendant agrees that a flight instruction would have been proper if another eyewitness (e.g. a shopkeeper) identified him as the person who fled the scene. Instead, defendant urges that Moore's testimony on flight must be discounted apparently because she was the sole witness to testify about the crime itself. Defendant offers no authority for his position, and we reject it.

## DISPOSITION

The judgment is affirmed.

_____
Miller, J.

WE CONCUR:


_____
Kline, P.J.


_____
Stewart, J.


A154512, *People v. Rogers*